**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**RECEIVED**
11/16/2026
KELLY L. STEPHENS, Clerk

**No. 26-2014**

RODERICK WRIGHT,
Plaintiff-Appellant,

v.

AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION,
Defendant-Appellee.

On Appeal from the United States District Court
for the Western District of Michigan
No. 1:25-cv-01367 (Hon. Paul L. Maloney)

**APPELLANT'S MOTION FOR AN INJUNCTION PENDING APPEAL**
(Fed. R. App. P. 8(a)(2))

Plaintiff-Appellant Roderick Wright, pro se, moves under Fed. R. App. P. 8(a)(2) for an injunction pending appeal requiring ASHA, while this appeal is pending, to return its public certification verification page for him to the way it read before ASHA posted what it calls a "Board of Ethics sanction," to take down its postings of that finding, which rests on false facts, on asha.org and in The ASHA Leader, and to accept his 2027 renewal payment.

Two sets of documents are attached. Exhibit A is Appellant's declaration identifying five documents, Exhibits A-1 to A-5, cited in Parts II.B.1 and II.B.5. (Fed. R. App. P. 8(a)(2)(B)(ii).) Exhibits B-1 to B-3 are the district court's Order Adopting Report and Recommendation (RE 104, Page ID # 2878–2884), the

Report and Recommendation (RE 101, Page ID # 2806–2819), and the Judgment (RE 105, Page ID # 2885). (Fed. R. App. P. 27(a)(2)(B)(iii).)

## I. WHY THIS MOTION IS FILED HERE (FRAP 8(a)(2)(A))

Rule 8(a)(2)(A) permits this motion where moving first in the district court "would be impracticable," or where "the district court denied the motion or failed to afford the relief requested." The second applies.

1. The district court has had a motion for this relief since April 7, 2026: Appellant's motion to stay, with a proposed order granting an injunction pending appeal (Motion to Stay, RE 67; Errata, RE 68). The district court never ruled on it (District Court Docket), and the final order does not mention it (Order Adopting R&R, RE 104, Page ID # 2878–2884). Seven months without a ruling is a failure to afford the relief requested.

2. Appellant asked for this relief the day he sued. ASHA had already refused to deal with him directly: on September 2, 2025, Katharine Meyer wrote to his attorneys, "I will not engage directly with your client on these matters," and "We will not be responding to any further correspondence that is sent to us by your client." (Meyer Email, RE 1-8, Page ID # 38.) So he asked the court. His motion for a preliminary injunction, filed with the complaint on November 5, 2025, asked that ASHA be "ENJOINED from enforcing or publishing any revocation" (Proposed Order, RE 2-1, Page ID # 91). The district court held the motion for five

months. ASHA published in January 2026 while it was pending (Board of Ethics Decisions Posting, RE 45-2, Page ID # 507–508). The court denied it on April 6, 2026 (Order Denying Preliminary Injunction, RE 65, Page ID # 704–709).

## II. THE FOUR FACTORS

This Court considers "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Ky. ex rel. Danville Christian Acad., Inc. v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* (quotation omitted).

### A. Likelihood of success: summary judgment was entered on a fact ASHA and the district court both called disputed, without weighing Appellant's evidence.

Summary judgment is reviewed de novo. *Levine v. DeJoy*, 64 F.4th 789, 796 (6th Cir. 2023). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

1. The deciding fact is the start date of Appellant's Clinical Fellowship. Both of the Board's rationales depend on it: a 25% telepractice limit that applies only to fellowships that "begin on or after January 1, 2023" (ASHA's Summary Judgment Exhibit A, RE 80-1, Page ID # 912), and a finding that he provided "false data" (Initial Determination, RE 80-2, Page ID # 915). ASHA has admitted that the start date is the whole accusation, and it attached a false qualifier to the admission. Appellant asked it to admit that it contends the application was false "because of the Clinical Fellowship start date he reported, and not because of any other field in the application." ASHA answered: "Admitted, due to the stated start date under the mentorship of Rachel Johannes." (ASHA's Responses to Requests for Admission, RE 77, Page ID # 866.) The application states no start date "under the mentorship of" anyone. Its report form asks when the experience began and ended and has no field for when a mentor began (ASHA Portal Report, RE 86-9, Page ID # 2451). ASHA has also admitted that its written standards do not make direct client services a condition of the start date. Appellant asked it to admit that its "written standards in effect during 2022-2023 do not state that a Clinical Fellowship 'start date' requires that the Clinical Fellow has already provided direct client services, as opposed to beginning mentored professional work after licensure." ASHA answered: "Admitted when all submitted components of the Clinical Fellowship are met and verified by the proper CF mentor using the CF Mentor Verification

Form." (ASHA's Responses to Requests for Admission, RE 77, Page ID # 865.) ASHA's portal report reads "Mentor Verification Completed." (ASHA Portal Report, RE 86-9, Page ID # 2451.)

2. ASHA told the district court that this fact is disputed: "the CF initiation date is genuinely disputed" (ASHA's Response to Rule 56(g) Motion, RE 95, Page ID # 2664). So did the district court: "the parties dispute various facts (e.g., Plaintiff' [sic] start date)" (Order Adopting R&R, RE 104, Page ID # 2883).

3. The record of a 2022 start includes: an employment agreement "effective 10-17-2022" (Employment Agreement, RE 1-2, Page ID # 14); a CFY plan with an estimated beginning date of 10/17/2022, signed by Victoria Hanawalt, MS, CCC/SLP, his initial ASHA-approved supervisor (CFY Plan, RE 1-3, Page ID # 18); a New Mexico Clinical Fellow license issued November 23, 2022 (New Mexico License Verification, RE 61-4, Page ID # 668); Ms. Hanawalt's December 8, 2022 email, signed "MS CCC/SLP," that he "began the CF experience before 12/31/2022" (Hanawalt Email, RE 1-5, Page ID # 22); and ASHA's portal report, verified by his second ASHA-approved mentor, Rachel Johannes, showing the start and end dates of his entire Clinical Fellowship: "Start Date: 10/17/2022" and "End Date: 02/29/2024" (ASHA Portal Report, RE 86-9, Page ID # 2454). That report runs across both of his employers during his Clinical Fellowship. A Clinical Fellowship is a period of supervised practice, "a minimum of 1,260 hours and a

minimum of 36 weeks," not a placement or a contract, and under ASHA's Guide, "Clinical Fellows may work in more than one location and they may have more than one CF mentor." (Guide to the ASHA Clinical Fellowship Experience, RE 91-5, Page ID # 2551, 2555.) ASHA's rule runs one clock from the start of the fellowship: "Clinical Fellows have 48 months from the date their CF experience began to complete their experience." (CFCC COVID-19 Guidance, RE 61-2, Page ID # 661.) A start date that moved with each employer would restart that clock.

4. The report and recommendation recites the rule, that the court must "draw all justifiable inferences in favor of the party opposing the motion" (Report and Recommendation, RE 101, Page ID # 2811), and cites none of Appellant's exhibits. Apart from the pleadings and the parties' filings, its record cites are to ASHA's exhibits (ASHA's Preliminary Injunction Response Exhibits, RE 38-1 through 38-7) and to this Court's July 14, 2026 order on interim relief (Sixth Circuit Order, RE 83). Appellant objected on exactly that ground (Objections, RE 103, Page ID # 2872). The adopting order does not state the Rule 56 standard and does not answer the objection (Order Adopting R&R, RE 104). This Court reversed the same district court for the same error. *Levine*, 64 F.4th at 799 ("The district court erred when it failed to afford any weight to those facts.").

5. The district court wrongly treated this Court's July 14, 2026 order as having "resolv[ed] the appeal" (Order Adopting R&R, RE 104, Page ID # 2879).

That order denied Appellant's motion in this Court for an injunction pending appeal in No. 26-1329. It did not decide the appeal. It reviewed the preliminary-injunction ruling, which rested on the original complaint, and described that complaint's Count III as a claim that "ASHA's failure to accommodate him deprived him of fair procedure" (Sixth Circuit Order, RE 83, Page ID # 927; Complaint, RE 1, Page ID # 6). It rested on the accommodation claims and said Appellant's start-date argument did not go "to ASHA's alleged failure to accommodate" (Sixth Circuit Order, RE 83, Page ID # 927). This Court has not decided the start date, and findings at the preliminary-injunction stage do not bind the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). At summary judgment the operative pleading was the First Amended Complaint, filed March 11, 2026. Its Count III, a Michigan common-law claim for denial of fair procedure under diversity jurisdiction, alleges that ASHA "relied upon incomplete and misleading information regarding Plaintiff's CF initiation date," mischaracterized his start date "despite contemporaneous written confirmation that his CF began in 2022," and then applied "the wrong telepractice standards" (First Amended Complaint, RE 58, Page ID # 602). The district court did not decide the start date; it called it disputed and entered judgment anyway (Order Adopting R&R, RE 104, Page ID # 2883). Neither the report and recommendation nor the order analyzed Count III under Michigan law. The district court instead said it could not "ignore

the Sixth Circuit's findings concerning the nature of Plaintiff's claims" and said Appellant had not shown that his claims would survive "if they were not hinged on the failure to provide a reasonable accommodation" (*id.*). It thus decided the amended Count III on this Court's description of the original one, made for a different ruling on a different pleading.

**B. Irreparable harm**

1. ASHA awarded Appellant the CCC-SLP on June 25, 2024, valid through March 31, 2027 (Verification Page Capture, RE 42-5, Page ID # 478). ASHA then posted on that same public verification page: "This individual has a current Board of Ethics sanction." (Verification Page Capture, RE 42-6, Page ID # 479.) After the six-month period ASHA set had ended, the page still read "This individual has past public Board of Ethics history" and listed his status as "Not Certified" (Verification Page Capture, RE 92-2, Page ID # 2606, captured July 21, 2026). On November 16, 2026, it read the same (Ex. A-5).

2. ASHA's published decision falsely states that Appellant "[k]nowingly provided false data as part of their ASHA certification application." (Board of Ethics Decisions Posting, RE 45-2, Page ID # 508.)

3. ASHA took the matter to a state regulator. On February 18, 2026, the New Mexico licensing board opened a complaint naming "Katherine Meyer-ASHA" as complainant and reporting "a ASHA Ethics complaint filed against

you" (New Mexico Complaint Correspondence, RE 71-5, Page ID # 773). Fifty-seven days later, on April 16, 2026, the board closed it: "After careful consideration, the Department decided to close the complaint at this time." (New Mexico Complaint Correspondence, RE 71-5, Page ID # 774.) The notice records no finding against Appellant and no discipline. While the complaint was open, the board's license verification dated March 9, 2026 answered "No" to the question "Is Licensee presently under an investigation or disciplinary action?" (New Mexico License Verification, RE 61-4, Page ID # 667–668.) This is the same board that issued his Clinical Fellow license on November 23, 2022 (New Mexico License Verification, RE 61-4, Page ID # 668). ASHA, by contrast, still showed "past public Board of Ethics history" for him on its public verification page more than three months later (Verification Page Capture, RE 92-2, Page ID # 2606, captured July 21, 2026).

4. A published finding of dishonesty, shown to any employer who checks his credential, cannot be undone with money. "An injury is irreparable if it cannot be undone through monetary remedies." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995) (quotation omitted). The loss of customer goodwill "often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992). ASHA never employed Appellant, so no back-

pay remedy runs from it to him (Response to ASHA's Summary Judgment Motion, RE 86, Page ID # 2360).

5. The harm has reached his work and his credential. ASHA's posting reached his employer. On February 25, 2026, the owner of the company he worked for wrote to him, "We came across this posting," copied the posting into her email, and told him he was "not to use the credentials CCC-SLP on any documentation." On June 24, 2026, she wrote that the company had two openings for the next school year. One required Spanish. The other required the CCC: "Because the supervisory role requires ASHA CCCs and you are not currently eligible for that position, we cannot consider you for that opening at this time." She concluded: "we do not have another available placement that matches your qualifications." (*Wright v. Am. Speech-Language-Hearing Ass'n*, No. 1:26-cv-02518 (W.D. Mich.), ECF No. 1-4.) Eighteen days later, on July 12, 2026, the same company advertised a full-time, remote "Speech Language Pathologist Teletherapist" position in New Mexico, the same work he had done for that company, starting "End of July 2026/Beginning of August 2026," the start of the very school year for which it had just told him it had no placement for him. Its requirements: "CCCs required." (Ex. A-4.) His employer treated ASHA's false publication as true, and he lost his job over it. On September 9, 2026, ASHA emailed Appellant: "Renewal for the 2027 membership and affiliation year is now open!" (Ex. A-1.) It set a

deadline: “The deadline to renew is December 31, 2026.” (Ex. A-1.) The same day, ASHA’s dues page showed an invoice in the name of “Mr. Roderick Wright, CCC-SLP” for the “2027 Certification or In Process Fee.” (Ex. A-2.) On October 19, 2026, the same web address answered: “We are unable to complete your renewal.” (Ex. A-3.) ASHA invited him to renew and invoiced him as a CCC-SLP, but its renewal page would not complete the renewal.

### C. Harm to others

Appellant asked ASHA to admit that it “awarded Plaintiff the Certificate of Clinical Competence in Speech-Language Pathology (CCC-SLP) on or about June 25, 2024, based on that April 13, 2024 application.” ASHA admitted it and added a statement that is false: “Admitted based on the inaccurate CF start date that was later corrected by Plaintiff’s mentor, Rachel Johannes.” (ASHA’s Responses to Requests for Admission, RE 77, Page ID # 864–865.) The start date was never corrected. ASHA’s staff form records that Ms. Johannes “verified that the Respondent’s CF experience started in October of 2022,” then “confirmed the Respondent’s start date as October 17, 2022,” then sent “a clarifying email that noted that the Respondent started his CF on October 17, 2022.” (ASHA’s Preliminary Injunction Response Exhibit A, RE 38-1, Page ID # 416–417.) Taking the postings down while this appeal is pending leaves every record in place for this Court’s review. It stops only the publication, and only until the appeal is decided.

### D. Public interest

The public interest is served when a published statement about a professional's credential matches the record. ASHA is the only organization that issues the CCC, and it runs the public page where that credential is checked (Verification Page Capture, RE 42-6, Page ID # 479). The public interest is not served when ASHA publishes, about a person who holds its credential, a finding of dishonesty that rests on false facts. ASHA's records show a fellowship beginning October 17, 2022, verified by Rachel Johannes, his second and last ASHA-approved mentor (ASHA Portal Report, RE 86-9, Page ID # 2454). ASHA's form asked her, "Are the weeks and hours indicated by the Clinical Fellow accurate?" She answered "Yes." (ASHA Portal Report, RE 86-9, Page ID # 2448.) That is the process ASHA's Guide prescribes: "Clinical Fellows enter the experience on their online application. Mentors verify the hours and enter the Clinical Fellow's scores online." (Guide to the ASHA Clinical Fellowship Experience, RE 91-5, Page ID # 2556.)

## III. RELIEF REQUESTED

Appellant asks the Court to order ASHA, within seven days and until this Court issues its mandate, to:

1. return its certification verification page for Roderick Wright to the way it read before ASHA posted what it calls a "Board of Ethics sanction," showing his

Certification Status as "CCC-SLP," Certification Awarded "06/25/2024," and Valid Through "03/31/2027," with no Board of Ethics statement (Verification Page Capture, RE 42-5, Page ID # 478), and keep his name and record on that page;

2. remove the entry under his name from the "Board of Ethics Decisions" listings on asha.org and in The ASHA Leader (Board of Ethics Decisions Posting, RE 45-2, Page ID # 508);

3. not republish the finding or its rationale elsewhere while this appeal is pending;

4. accept his 2027 renewal payment on the invoice ASHA issued to him (Ex. A-2); and

5. otherwise treat his certification, while this appeal is pending, as it stood on November 5, 2025.

That returns the parties to "the last uncontested status quo between the parties." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978) (quotation omitted). It is the relief Appellant sought in the district court on November 5, 2025, including a request that ASHA be barred "from refusing or withholding the Plaintiff's annual CCC renewal" (Proposed Order, RE 2-1, Page ID # 91). Appellant asks that any bond or other security under Fed. R. App. P. 8(a)(2)(E) be set at a nominal amount.

Dated: November 16, 2026

Roderick Wright, pro se
6181 Lake Michigan Drive, #103
Allendale, MI 49401
Phone: (616) 990-9284
Email: wrightiir@yahoo.com
Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

This motion complies with Fed. R. App. P. 27(d)(2)(A) because it contains 3,035 words, excluding the parts exempted by Fed. R. App. P. 32(f). It complies with Fed. R. App. P. 27(d)(1)(E) because it was prepared in a proportionally spaced typeface, 14-point Times New Roman.

Roderick Wright

Roderick Wright

## CERTIFICATE OF SERVICE

I certify that on November 16, 2026, I filed this motion with the Clerk of the Court by email to CA06_Pro_Se_Efiling@ca6.uscourts.gov and served a copy on counsel for Appellee, Courtney Ann-Taylor Lavender, Plunkett Cooney, by email to clavender@plunkettcooney.com.

Roderick Wright

Roderick Wright

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**No. 26-2014**

RODERICK WRIGHT, Plaintiff-Appellant,
v.
AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION,
Defendant-Appellee.

**EXHIBIT A**
**DECLARATION OF RODERICK WRIGHT**

I, Roderick Wright, declare:

1. I am the Plaintiff-Appellant in this appeal. This declaration identifies the documents attached to it. Each statement below about a document's sender, date, subject, title, web address, or print date is taken from the face of that document.

2. Exhibit A-1 is a true and correct copy of an email from ASHA Dues Renewal (duesrenewal@mail.asha.org), dated Wednesday, September 9, 2026, 03:01 PM EDT, with the subject "Renewal for the 2027 membership and affiliation year is now open!", printed to PDF. The print date shown on it is 9/9/26, 6:04 PM.

3. Exhibit A-2 is a true and correct copy of the page at apps.asha.org/eweb/AshaDynamicPage.aspx?webcode=odrdues, titled "ASHA Online Dues Renewal - Invoice," printed to PDF. The print date shown on it is 9/9/26, 6:03 PM. The hyperlinks in Exhibits A-1 and A-2 are not active.

4. Exhibit A-3 is a true and correct copy of a screenshot of the page at apps.asha.org/eweb/AshaDynamicPage.aspx?webcode=odrdues, except as stated in

this paragraph. The date and time shown on the screenshot are 10/19/2026, 9:27 PM. The screenshot is cropped to the browser window. The browser's toolbar icons and bookmarks bar, and the taskbar other than the clock, are redacted.

5. Exhibit A-4 is a true and correct copy of a screenshot of the page at web.archive.org/web/20260712205613/https://unlimitedteletherapy.bamboohr.com /careers/73, except as stated in this paragraph. The date and time shown on the screenshot are 11/14/2026, 2:56 AM. The banner at the top of the page reads "1 capture" and "12 Jul 2026." The screenshot is cropped to the browser window. The browser's toolbar icons and bookmarks bar, and the taskbar other than the clock, are redacted. Pages 2 and 3 of Exhibit A-4 are enlargements of parts of the same screenshot.

6. Exhibit A-5 is a true and correct copy of the page at apps.asha.org/eWeb/ashadynamicpage.aspx?site=ashacms&webcode=cccdetailsv2 &key=ec3250ba-3d84-4c8b-a31c-5bc2dbeb7d6b, titled "ASHA Certification Verification Details," printed to PDF. The print date shown on it is 11/16/26, 4:56 AM.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 16, 2026, at Allendale, Michigan.

Roderick Wright

Roderick Wright

No. 26-2014

# EXHIBIT A-1

Email from ASHA Dues Renewal (duesrenewal@mail.asha.org)
dated Wednesday, September 9, 2026, 03:01 PM EDT
printed 9/9/26, 6:04 PM

Renewal for the 2027 membership and affiliation year is now open!

From: ASHA Dues Renewal (duesrenewal@mail.asha.org)
To: wrightiir@yahoo.com
Date: Wednesday, September 9, 2026 at 03:01 PM EDT

Renew Online Today | View in Browser

ASHA




Dear Roderick Wright,
14498906

Renewal for the 2027 membership and affiliation year is now open!

Thank you for being a part of the ASHA community. Together, we continue the work to make effective communication accessible and achievable for all.

We're here to support you throughout your professional journey.

To explore more benefits, visit ASHA Member Benefits.

The deadline to renew is **December 31, 2026.** Renew online today to avoid potential delays or longer phone wait times near the deadline.

Thank you again for being part of ASHA—and for the meaningful difference you make for your clients, patients, students, and community.

© 1997-2026 American Speech-Language-Hearing Association
2200 Research Boulevard, Rockville, MD 20850-3289 | Visit ASHA

You received this ASHA Dues Renewal message because of your membership or affiliation with ASHA. If you have a technical issue, please send an email to emailsupport@asha.org.

Case: 26-2014 Document: 3 Filed: 11/16/2026 Page: 20

Unsubscribe | ASHA Privacy Statement

No. 26-2014

# EXHIBIT A-2

Page at apps.asha.org/eweb/AshaDynamicPage.aspx?webcode=odrdues, titled “ASHA Online Dues Renewal - Invoice,” printed 9/9/26, 6:03 PM

Case: 26-2014 Document: 3 Filed: 11/16/2026 Page: 22

ASHA

# American Speech-Language-Hearing Association

Making effective communication, a human right, accessible and achievable for all.

Search

Click here to learn more how to change your membership or affiliation level before renewal.

# Invoice

**Name:** Mr. Roderick Wright, CCC-SLP

**Account Number:** 14498906

**Invoice Number:** 6984236

| **Description** | **Amount** |
|---|---|
| 2027 Certification or In Process Fee | $221 |
| **Optional Payments** | |
| ☑ CE Registry Fee | $38 |
| ☑ ASHFoundation Donation | |
| ○ **$30** ◉ **$36** ○ **$50** ○ **$100** Other $ 0 | $ 36 |
| **Total (All amounts are U.S. dollars)** | **$** 295 |

**Please see important notifications below about your payments before continuing.**

**Then click the 'Update Total & Continue' button to proceed.**

**Update Total & Continue** **Reset Invoice**

**Code of Ethics/Code of Conduct Statement**

We include a statement of affirmation to abide by the ASHA Code of Ethics on initial applications for ASHA membership, certification, and affiliation. To further remind everyone of its importance to our field, ASHA is including this affirmation statement on the annual dues renewal notice. Payment of your dues and fees constitutes your affirmation to abide by the Code of Ethics or other code of professional conduct to which you were bound upon application to the association. More information on why the Code of Ethics is important for ASHA is available online.

**Dues Payments**

Dues payments to ASHA, a 501(c)6 organization, are not deductible as charitable contributions for federal income tax purposes. However, they may be deductible under other provisions of the Internal Revenue Code subject to restrictions imposed as a result of lobbying activities. In those situations where dues may be deductible, ASHA estimates that the nondeductible portion of your 2027 dues is 4%.

Post Office regulations require that we assign a portion of membership dues to the cost of publications we provide as a benefit of membership. Member dues for 2027 includes a subscription to The ASHA Leader ($16).

Access to the full text of all four ASHA journals (AJA, AJSLP, LSLHR, LSHSS) is provided online.

No requests for refunds of 2027 dues/fees will be honored after January 1, 2027.

**Contributions**

Contributions to the American Speech-Language-Hearing Foundation (ASHFoundation) and the American Speech-Language-Hearing Association Political Action Committee (ASHA-PAC) are voluntary and are not a requirement for membership in ASHA. The opportunity to make a contribution is included on the dues notice for ASHA members convenience.

**ASHFoundation Contributions**

Contributions to the ASHFoundation, a 501(c)3 organization, are tax deductible to the extent permitted by law.

**ASHA-PAC Contributions**

ASHA will not look upon with favor or disfavor any member because of his/her level of contribution or decision not to make a contribution. Contributions to the ASHA-PAC are not deductible for federal income tax purposes.

---

© 1997-2026 American Speech-Language-Hearing Association

No. 26-2014

# EXHIBIT A-3

Screenshot of the page at
apps.asha.org/eweb/AshaDynamicPage.aspx?webcode=odrdues
Date and time shown on the screenshot: 10/19/2026, 9:27 PM

apps.asha.org/eweb/AshaDynamicPage.aspx?webcode=odrdues

REDACTED

ABOUT JOIN ASHA ASHA STORE MY ACCOUNT WRIGRSLP@MAIL.COM LOGOUT

ASHA

American Speech-Language-Hearing Association
Making effective communication, a human right, accessible and achievable for all.

Search

CAREERS CERTIFICATION PUBLICATIONS EVENTS ADVOCACY CONTINUING EDUCATION PRACTICE MANAGEMENT RESEARCH

Audiologists Speech-Language Pathologists Academic & Faculty Audiology & SLP Assistants Students Public

Click here to learn more how to change your membership or affiliation level before renewal.

# We are sorry...

We are unable to complete your renewal.

Possible reasons for seeing this message include:

- You are not recognized as an ASHA or NSSLHA member.
- You are applying to become a member of ASHA for the first time.
- An error occurred in the processing of your dues renewal.

If you need assistance, please contact the Action Center at 800-498-2071 (8:30 a.m.-5:00 p.m. EST Monday-Friday).

Thank you.

We use cookies to offer you a better browsing experience, analyze site traffic, personalize content, and serve targeted advertisements. If you continue to use this site, you consent to the use of cookies. Read about how we use cookies and how you can control them by visiting our Cookie Statement.

OK

REDACTED

9:27 PM
10/19/2026

No. 26-2014

# EXHIBIT A-4

Screenshot of the page at
web.archive.org/web/20260712205613/
https://unlimitedteletherapy.bamboohr.com/careers/73
Date and time shown on the screenshot: 11/14/2026, 2:56 AM
Pages 2 and 3 are enlargements of parts of the same screenshot

web.archive.org/web/20260712205613/https://unlimitedteletherapy.bamboohr.com/careers/73

REDACTED

INTERNET ARCHIVE WayBackMachine https://unlimitedteletherapy.bamboohr.com/careers/73 Go 1 capture 12 Jul 2026 JUN JUL AUG 12 2025 2026 2027 About this capture

Unlimited Teletherapy

Privacy Policy

Job Openings

## Speech Language Pathologist Teletherapist

None - Remote, New Mexico (Remote)

**Join Our Team at Unlimited Teletherapy – Where Professional Growth Meets Flexibility and Fun!**

**Start Date: End of July 2026/Beginning of August 2026**

Are you a passionate Speech-Language Pathologist looking for a collaborative, supportive environment where your work is valued and your skills can shine? At **Unlimited Teletherapy,** we combine flexibility, connection, and a strong sense of purpose to deliver top-tier services to students across New Mexico. Whether you're onsite or virtual, you'll be part of a team that empowers both professionals and the students we serve.

🌟 **What We Offer Our Team:**

- **3 Lead SLPs and Onsite E-Helpers** to support your success
- **$150 annual reimbursement** for any online subscription of your choice
- Access to **Q Global, WPS, and paper protocols**
- **Zoom Business Platform** for seamless teletherapy sessions
- **Typical Caseload/Workload Model**
- **Medical, Dental, Vision, and Life Insurance** — 70% of employee-only premiums paid (full-time only)
- **Simple IRA with 3% match**
- **Licensure, CCCs, and Background Check Fees Covered**
- **ASHA Learning Pass CEU Access**
- **Laptop Provided**
- **W-2 Salaried Position:** 7.5 hours/day, with up to 25% of time reserved for indirect services (37.5 hours/week)
- **185- 194 Contract Days (for those starting at the beginning of the school year)**
- **Monthly Pay Schedule over 12 months**

🧠 **About Us**

We're professional, collaborative, and committed to helping our team members thrive. We celebrate individuality, encourage personal growth, and cultivate a supportive atmosphere where every voice is heard.

**Our work environment includes:**

- Ongoing **professional development** and **on-the-job training**
- A **safe, welcoming workplace**
- A team that values **balance and belonging**

🔎 **What We're Looking For:**

We're seeking **Speech-Language Pathologists (SLP)** that are:

English; Bilingual: English/Spanish and English/Arabic

- Compassionate, skilled, and dedicated to helping students from **Pre-K through 12th grade**
- Ready to assess, diagnose, and treat speech, language, and cognitive-communication disorders
- A team player who thrives in a collaborative environment
- Committed to maintaining accurate documentation and developing meaningful connections with students, families, and school staff

✅ **Requirements:**

- Master's Degree in Speech-Language Pathology
- Bilingual Multicultural Endorsement encouraged if applying for the bilingual positions only
- Current or eligible for **New Mexico SLP Licensure and NMPED Licensure**
- Must pass a **background check**
- CCCs required

Come work with a team that recognizes your worth, supports your growth, and makes space for laughter along the way. At Unlimited Teletherapy, you're not just filling a position — you're joining a purpose.

**Apply for This Job**

Link to This Job

https://web.archive.org/web/20260712

Location
**Remote, New Mexico (Remote)**

Department
**None**

Employment Type
**Full-Time**

Minimum Experience
**Experienced**

Compensation
**$57-$65 per hour DOE**

REDACTED

2:56 AM
11/14/2026

Exhibit A-4, page 2: enlargement of the upper part of the posting shown on page 1

Unlimited Teletherapy

Privacy Policy

< Job Openings

## Speech Language Pathologist Teletherapist

None - Remote, New Mexico (Remote)

**Join Our Team at Unlimited Teletherapy – Where Professional Growth Meets Flexibility and Fun!**

**Start Date: End of July 2026/Beginning of August 2026**

Are you a passionate Speech-Language Pathologist looking for a collaborative, supportive environment where your work is valued and your skills can shine? At **Unlimited Teletherapy,** we combine flexibility, connection, and a strong sense of purpose to deliver top-tier services to students across New Mexico. Whether you're onsite or virtual, you'll be part of a team that empowers both professionals and the students we serve.

🌟 **What We Offer Our Team:**

- **3 Lead SLPs and Onsite E-Helpers** to support your success
- **$150 annual reimbursement** for any online subscription of your choice
- Access to **Q Global, WPS, and paper protocols**
- **Zoom Business Platform** for seamless teletherapy sessions
- **Typical Caseload/Workload Model**
- **Medical, Dental, Vision, and Life Insurance** — 70% of employee-only premiums paid (full-time only)
- **Simple IRA with 3% match**
- **Licensure, CCCs, and Background Check Fees Covered**
- **ASHA Learning Pass CEU Access**
- **Laptop Provided**

**Apply for This Job**

Link to This Job

https://web.archive.org/web/20260712:

Location

Remote, New Mexico (Remote)

Department

None

Employment Type

Full-Time

Minimum Experience

Experienced

Compensation

$57-$65 per hour DOE

Exhibit A-4, page 3: enlargement of the lower part of the posting shown on page 1

- **Licensure, CCCs, and Background Check Fees Covered**
- **ASHA Learning Pass CEU Access**
- **Laptop Provided**
- **W-2 Salaried Position:** 7.5 hours/day, with up to 25% of time reserved for indirect services (37.5 hours/week)
- **185- 194 Contract Days (for those starting at the beginning of the school year)**
- **Monthly Pay Schedule over 12 months**

**About Us**

We're professional, collaborative, and committed to helping our team members thrive. We celebrate individuality, encourage personal growth, and cultivate a supportive atmosphere where every voice is heard.

**Our work environment includes:**

- Ongoing **professional development** and **on-the-job training**
- A **safe, welcoming workplace**
- A team that values **balance and belonging**

**What We're Looking For:**

We're seeking **Speech-Language Pathologists (SLP)** that are:

English; Bilingual: English/Spanish and English/Arabic

- Compassionate, skilled, and dedicated to helping students from **Pre-K through 12th grade**
- Ready to assess, diagnose, and treat speech, language, and cognitive-communication disorders
- A team player who thrives in a collaborative environment
- Committed to maintaining accurate documentation and developing meaningful connections with students, families, and school staff

**Requirements:**

- Master's Degree in Speech-Language Pathology
- Bilingual Multicultural Endorsement encouraged if applying for the bilingual positions only
- Current or eligible for **New Mexico SLP Licensure and NMPED Licensure**
- Must pass a **background check**
- CCCs required

Come work with a team that recognizes your worth, supports your growth, and makes space for laughter along the way. At Unlimited Teletherapy, you're not just filling a position — you're joining a purpose.

Experienced

Compensation

**$57-$65 per hour DOE**

No. 26-2014

# EXHIBIT A-5

Page at apps.asha.org/eWeb/ashadynamicpage.aspx?site=ashacms&webcode=cccdetailsv2, titled “ASHA Certification Verification Details,” printed 11/16/26, 4:56 AM

ASHA

## American Speech-Language-Hearing Association

Making effective communication, a human right, accessible and achievable for all.

Search

# ASHA Certification and Ethics Verification

**This individual has past public Board of Ethics history.**

## Certification Status

This is to verify that the individual listed below does not currently hold ASHA certification.

In order to achieve ASHA certification an individual must meet the requirements outlined in the certification standards at the time of application.

For more information, please visit the ASHA certification website at http://www.asha.org/certification

**Name:**
Roderick Wright
**ASHA Account Number:**
XXXX8906
**Certification Status:**
Not Certified

## Public Ethics History from 1998 to present

The ASHA Board of Ethics found this individual in violation of the ASHA Code of Ethics, for which the individual received a public sanction.

### Revocation of Membership and Certification Rationale

6 months, Effective 01/20/2026
Code of Ethics (2023): Principle(s) II-B; IV-E, IV-G
View Details in The ASHA Leader.

## Clinical Instruction, Supervision or Clinical Fellowship Mentor

Roderick Wright **has not yet met** the 2020 ASHA certification standards for providing clinical instruction and supervision to individuals preparing for ASHA certification.

For more information, please read more about the 2020 Certification Ethics and Supervision requirements.

## About ASHA Certification

ASHA certification must be renewed on a yearly basis through payment of annual dues and/or fees. There also is an additional maintenance requirement for completion of 30 hours of professional development activities every three years.

ASHA does not issue certification numbers. Additionally, ASHA does not maintain copies of application materials submitted for certification once certification has been awarded.

ASHA does not maintain original/paper copies of certification applications and supporting documents after certification has been awarded. ASHA retains digital copies of certification applications and supporting documents for 10 years, and ETS retains PRAXIS results for 10 years.

© 1997-2026 American Speech-Language-Hearing Association

No. 26-2014

# EXHIBIT B-1

Order Adopting Report and Recommendation
filed November 6, 2026
(RE 104, Page ID # 2878–2884)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RODERICK WRIGHT,<br>Plaintiff,<br><br>-v-<br><br>AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION,<br>Defendant. | No. 1:25-cv-1367<br><br>Honorable Paul L. Maloney |

## ORDER ADOPTING REPORT AND RECOMMENDATION

Plaintiff Roderick Wright, proceeding without the assistance of counsel, sued Defendant American Speech-Language-Hearing Association (ASHA). Plaintiff alleged claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). The First Amended Complaint also included a claim for a denial of fair procedure under common law. The court referred the lawsuit to the Magistrate Judge.

The parties filed several motions. Defendant filed a motion for summary judgment. ECF No. 80. Plaintiff filed a motion for summary judgment. ECF No. 91. He then filed a second motion for summary judgment for Count III, his fair procedure claim. ECF No. 92. Plaintiff filed a motion for sanctions, ECF No. 84, and objections to the declaration of Katherine Meyer and a Rule 56(h) motion, ECF No. 99.

The Magistrate Judge issued a report recommending the court grant Defendant's motion for summary judgment, deny Plaintiff's motions, and then dismiss this lawsuit. ECF No. 101. Plaintiff filed objections. ECF No. 103. The court will adopt the report and recommendation.

A.

After being served with a report and recommendation (R&R) issued by a magistrate judge, a party has fourteen days to file written objections to the proposed findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). A district court judge reviews de novo the portions of the R&R to which objections have been filed. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam).

B.

The Sixth Circuit has been afforded an opportunity to review the complaint. Plaintiff sought a preliminary injunction, which this court denied. Plaintiff filed an appeal. In resolving the appeal, the circuit court reviewed and summarized the complaint. The court concluded that

> all four counts in Wright's complaint depend on proving that he requested a reasonable accommodation during the ethics review process and that the ASHA failed to provide it. Even if Wright is attempting to argue that ASHA failed to engage in the informal interactive process required by the ADA, he still must start by showing that the ASHA denied his request for accommodations.

ECF No. 83 PageID.927.[1] This court cannot ignore the Sixth Circuit's description of Plaintiff's claims. *See Hanover Ins. Co. v. American Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997). The Magistrate Judge found that the failure to participate in the interactive process does not give rise to an independent claim; rather, Plaintiff needed to first establish that he

---

[1] The court has omitted the various citations contained within the quotation.

requested an accommodation and that Defendant failed to provide it. The Magistrate Judge found that Plaintiff's evidence did not create a genuine issue of material fact on this issue. The Magistrate Judge also found that Plaintiff failed to establish a genuine issue of material fact relating to his challenge to the decision made by ASHA's Board of Ethics.

Objections 1 and 2.

Starting on page 3 (PageID.2808) and continuing through page 5 (PageID.2810) of the R&R, the Magistrate Judge summarized the ASHA's Board of Ethics Determination, a document that can be found at ECF No. 38-1. Plaintiff objects to some of the statements found on page 5 of the R&R.

The court overrules Plaintiff's objections. The Magistrate Judge fairly summarized the relevant allegations set forth against Plaintiff in the Board of Ethics Determination document.

Objection 3.

On pages 2 and 3 (PageID.2807-08) of the R&R, the Magistrate Judge block quotes a portion of the Sixth Circuit's opinion affirming the denial of Plaintiff's motion for a preliminary injunction. Plaintiff objects and argues that the Magistrate Judge erred by adopting the facts set forth in the earlier stage of the litigation as binding during summary judgment.

The court overrules Plaintiff's objection. The Magistrate Judge accurately quoted the Sixth Circuit's opinion. Plaintiff's disagreement with the Sixth Circuit's description of events giving rise to this lawsuit does not provide any basis for this court to reject the R&R.

Objections 4-7.

On pages 12 and 13 (PageID.2817-18) of the R&R, the Magistrate Judge discussed Plaintiff's third cause of action, which Plaintiff described as a state law fair-procedure claim. The Magistrate Judge sets forth the standard for judicial review for such a challenge. The Magistrate Judge then found that Plaintiff did not overcome the "great deference" that a court must afford the accrediting agency. The Magistrate Judge summarized Plaintiff's argument as merely disagreeing with the ASHA's conclusion. Plaintiff objects to the standard for review set forth in the R&R. Plaintiff argues that the correct standard of review includes a review of whether the agency's decision is supported by substantial evidence. Plaintiff contends that the AHSA falsified the record and used a fraudulent process to reach its decision.

The *Thomas M. Cooley Law School v. American Bar Association* opinion provides that a court "reviews only whether the decision of an accrediting agency such as the ABA is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence." 459 F.3d 705, 712 (6th Cir. 2006) (citations omitted). Plaintiff does not object to the portion of the R&R explaining the review of an accrediting agency's decision as arbitrary or unreasonable. The substantial evidence standard adds little to the analysis here.

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere

> scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (all citations omitted).

The court overrules Plaintiff's objections. Plaintiff has not persuaded the court that the Magistrate Judge erred in the portion of the R&R addressing his third cause of action. Counsel represented Plaintiff during this proceeding. While Plaintiff disagrees with the evidence the Board relied on and disagrees with the outcome, Plaintiff has not demonstrated that he, through counsel, was not afforded an adequate opportunity to present evidence or to challenge the evidence against him. The record demonstrates that the ASHA decision has sufficient support and conformed to the fundamental principles of fairness.

Objection 8.

On page 11 (PageID.2816) of the R&R, the Magistrate Judge concluded that that Plaintiff failed to present evidence creating a genuine issue of material fact that the ASHA denied his request for reasonable accommodations. Plaintiff objects. Plaintiff contends that ASHA refused to engage with him directly and also refused his request for a detailed explanation and supporting documentation about his start date.

The court overrules Plaintiff's objection. Counsel represented Plaintiff during this underlying proceeding. ASHA did not fail to afford reasonable accommodations by directing its communication to counsel. Plaintiff's demand for evidence does not constitute a reasonable accommodation based on his disability. Plaintiff's demand addresses the merits of the dispute. ASHA agreed to and provided the accommodations recommended by Plaintiff's doctor.

Objections 9-10.

The Magistrate Judge quoted the Sixth Circuit's opinion finding that all four of the causes of action depend on proving that Plaintiff requested a reasonable accommodation and ASHA failed to provide the reasonable accommodation. The Magistrate Judge also quoted the portion of the Sixth Circuit's opinion noting that ASHA granted and then provided reasonable accommodations. Plaintiff objects. Plaintiff argues both count III (fair process) and count IV (retaliation) do not depend on the failure to provide a reasonable accommodation. Plaintiff insists that a genuine issue of material fact exists whether ASHA provided the accommodations. Plaintiff contends that the conclusions made on the record at the preliminary injunction stage are not binding now.

The court overrules Plaintiff's objection. The court cannot ignore the Sixth Circuit's findings concerning the nature of Plaintiff's claims. The Magistrate Judge discussed in some detail the evidence in the record showing what reasonable accommodations were requested and were granted. And, Plaintiff has not demonstrated that either cause of action would survive if they were not hinged on the failure to provide a reasonable accommodation.

Objection 11.

Plaintiff alleged that counsel made false statements and requested sanctions. The Magistrate Judge found that neither ASHA nor counsel made false statements. Plaintiff objects.

The court overrules Plaintiff's objection. This case arises because the parties dispute various facts (e.g., Plaintiff' start date). That ASHA and counsel assert their version of the disputed facts in a brief does not warrant sanctions.

Objection 12.

Plaintiff requested the court strike portions of a declaration. The Magistrate Judge found the request moot because he did not rely on the declaration to resolve the motions for summary judgment. The Magistrate Judge also found Plaintiff's objections to the declaration to be argumentative. Plaintiff objects.

The court overrules the objection. Plaintiff does not dispute that the Magistrate Judge did not consider the declaration. The relief Plaintiff seeks is moot.

Objection 13.

Plaintiff objects to the recommendation. Having rejected all of the previous objections, the court finds the recommendations sound.

For these reasons, the court **ADOPTS** the report and recommendation. ECF No. 101. The court **GRANTS** Defendant's motion for summary judgment. ECF No. 80. The court **DENIES** Plaintiff's motion for sanctions, ECF No. 84, Plaintiff's two motions for summary judgment, ECF Nos. 91 and 92, and Plaintiff's objections to the declaration, ECF No. 99. Having resolved the motions for summary judgment without reference to the Meyer Declaration, the court **DISMISSES** as moot Plaintiff's motion to disregard the Meyer Declaration, ECF No. 102, which he filed after the Magistrate Judge issued the R&R. **IT IS SO ORDERED.**

Date: November 6, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge

No. 26-2014

# EXHIBIT B-2

Report and Recommendation
filed October 19, 2026
(RE 101, Page ID # 2806–2819)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

RODERICK WRIGHT,

Plaintiff,

v.

AMERICAN SPEECH-LANGUAGE
-HEARING ASSOCIATION,

Defendant.
_______________________________________/

Case No. 1:25-cv-01367

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R. & R.) addresses several motions:

- Defendant's motion for summary judgment – ECF No. 80;
- Plaintiff's motion for sanctions – ECF No. 84;
- Plaintiff's motion for summary judgment – ECF No. 91;
- Plaintiff's motion for summary judgment on Count III – ECF No. 92, and;
- Plaintiff's objections to the declaration of Katherine Meyer and Rule 56(h) motion – ECF No. 99.

Plaintiff Roderick Wright filed this complaint against Defendant American Speech-Language-Hearing Association (ASHA) challenging the revocation of a Certificate of Clinical Competence (CCC). Defendant revoked Plaintiff's CCC after determining that Plaintiff misrepresented his clinical fellowship experience. Plaintiff disagrees with Defendant's conclusion and states that Defendant violated the Americans with Disabilities Act (ADA) by failing "to make reasonable

modifications to policies, practices, or procedures" and by failing to "engage in the interactive process." ECF No. 58, PageID.601, (Count I). Plaintiff alleges that Defendant violated Section 504 of the Rehabilitation Act (RA) "by refusing to provide reasonable accommodations and by proceeding with disciplinary actions without addressing Plaintiff's disability needs." *Id.*, PageID.602, (Count II). Plaintiff further alleges a denial of fair procedures by conducting an ethics proceeding against him in a manner that denied him a fair opportunity to present evidence. *Id.*, (Count III). Plaintiff alleges that Defendant retaliated against him after he submitted a complaint for harassment in October of 2023 against Defendant's staff members, and after he requested accommodation in July of 2025. *Id.*, PageID.603, (Count IV).

The Sixth Circuit summarized the facts of this case in affirming the denial of Plaintiff's request for injunctive relief to prevent the enforcement and publication of the ASHA Board of Ethics decision:

> ASHA is a professional, scientific, and credentialing body for "audiologists; speech-language pathologists; speech, language, and hearing scientists; audiology and speech-language pathology assistants; and students." ASHA.ORG, *About the American Speech-Language-Hearing Association (ASHA)*, https://www.asha.org/about/ (last visited June 12, 2026). Graduate students seeking ASHA certification must complete a clinical fellowship, including a minimum number of hours providing care. At the start of 2023, ASHA ended its COVID-19-era policy of allowing applicants to complete their clinical fellowship hours 100% through telehealth; clinical fellowships beginning on or after January 1, 2023, cap telehealth hours at 25%.
>
> In October 2022, Wright began a placement as a clinical fellow to provide services to public schools in Albuquerque, New Mexico. He completed onboarding and training, but the placement was cancelled before he provided any direct care, and he did not begin his alternative placement until February 2023. Notwithstanding guidance from ASHA staff, Wright applied for certification using the 2022 start date and with more

> than 25% of his clinical hours completed by telehealth. ASHA granted Wright's application, but it subsequently determined that his application violated ASHA's code of ethics and revoked his membership for six months, after which Wright could petition for reinstatement.
>
> Wright sought further consideration and requested ADA accommodations based on his Complex PTSD diagnosis. His physician recommended six accommodations: "1. Extended deadlines (e.g., 45-60 days); 2. Written-only communication; 3. Clear, plain-language instructions; 4. Recognition of disability-related challenges; 5. Flexibility in submission formats; [and] 6. An interactive process acknowledging these needs." ASHA granted the request, promising to conduct all communications in writing, extending his time to respond, allowing Wright to submit a written statement, and accepting written answers to the Board's questions in lieu of an in-person hearing. ASHA's Board of Ethics ultimately affirmed the initial determination and six-month sanction.

ECF No. 83, PageID.925-926.

Defendant and Plaintiff both move for summary judgment. It is respectfully recommended that the Court grant Defendant's motion for summary judgment and dismiss this case, and deny Plaintiff's two motions for summary judgment. It is further recommended that the Court deny Plaintiff's motion for sanctions.

## II. The ASHA Board of Ethics Determination

In August of 2022, Wright applied for his CCC. In his application, he indicated that his clinical fellowship with Stepping Stones would begin in September of 2022. ECF No. 38-1, PageID.415. However, his start date was pushed back and "he only received non-client training and no direct client care." *Id.* Plaintiff then began a new position in February of 2023 with Early Childhood Education Center that involved telepractice and telesupervision. *Id.*

ASHA staff informed Plaintiff that his Stepping Stones experience would not count toward his clinical fellowship experience:

- September 13, 2023 (10:40 a.m.), Amanda Gallagher, ASHA's Director of Clinical Certification, responded to the Respondent and stated: "**Unfortunately, the scenario you described does not provide you with a CF experience start date in 2022 therefore you will need to meet the CF requirements for individuals initiating the CF experience on or after January 1, 2023. If I understand correctly, you did not ultimately work with any clients during your time with the Stepping Stones Group? If that is the case, then the experience cannot count toward your CF because: (i) you didn't receive the necessary direct and indirect mentorship during that time (which would be considered as a partial segment for purposes of your CF report) and (2) the time didn't include at least 80% direct care/care management of clients with communication, cognitive or swallowing difficulties**."

- October 5, 2023 (3:55 p.m.), **Ms. Gallagher emailed the Respondent and again stated that the time spent under Ms. Stevenson's mentorship will not count toward his CF experience, which means that the start date of his CF experience was later than January 1, 2023. A CF start date after January 1, 2023, means that to be eligible for ASHA certification, the Respondent would need to complete at least 75% of their time in care and care management via direct, onsite, in-person service delivery.** Ms. Gallagher stated that the Respondent could appeal the information submitted by the CF mentor by sending a letter to the CFCC.

*Id.*, PageID.416 (ICH Review, October 2, 2024, complaint).

Further notations explain the rationale in more detail in response to Plaintiff's questions to ASHA:

- September 13, 2023, the Respondent sent several additional emails asserting that his CF experience started in 2022 and stated the following points: (1)He was assured his CF experience would count; (2) ASHA had stated that his orientation and training with the school system counted; (3) There is no difference between a CF who did their CF teletherapy and one who did not; (4) Individuals who did in-person Clinical Fellowship Years (CFYs) were not better than him; (5) It is not his fault his assignment was cancelled; and (6) ASHA should not contract him anymore, as he has enough stress in his life, and he will continue the process of his application submission.
- September 25, 2023, Marlaina Stevenson, the SLP who was supposed to be the Respondent's CF mentor at Stepping Stones before he was terminated, sent in an attachment to the Respondent's Clinical Fellowship Skills Inventory (CFSI) and she stated that the Respondent did not spend 80% of his work week in direct clinical contact with patients with communication and/or swallowing disorders. Ms. Stevenson noted that she couldn't rate the Respondent's CF experience because she did not observe or rate any of his skills as he only attended training, and it was not possible for the Respondent to meet the minimum requirement of 6 hours of direct and 6 hours of indirect supervising during this time.
- September 28, 2023, ASHA certification emailed the Respondent and noted that his CF Mentor stated that the hours he reported for his CF experience were not accurate.

*Id.*

Wright later filed a complaint with ASHA stating that Ms. Gallagher was harassing him and that he did not want to hear from her again. *Id.* In December of 2023, Wright withdrew his Certification Application. *Id.*

About four months later, on April 13, 2024, Wright submitted a second Certification Application to ASHA, which indicated that his mentor was Rachael Johannes. *Id.* Ms. Johannes initially verified that Wright's clinical fellowship experience started in October of 2022, and that accommodation during the COVID-19 pandemic justified a 25 percent telepractice and 100 percent telesupervision. *Id.* ASHA's Chief Certification Officer emailed Ms. Johannes, who confirmed that Wright's start date was October 17, 2022, and that his end date was February 29, 2024. *Id.*, PageID.417. The next day, on June 25, 2024, Plaintiff was awarded his CCC. *Id.* The very next day, on June 26, 2024, Ms. Johannes sent a clarifying email that indicated that Wright started his Clinical Fellowship on October 17, 2022, but it was cancelled before he could start seeing students, and then Wright began a new Clinical Fellowship (CF) under Ms. Johannes. *Id.* On July 1, 2024, Ms. Johannes reported in an email that she did not begin mentoring Wright until February of 2023. *Id.*

Since Wright had been previously advised by ASHA staff "that the CF experience he reported that began on October 5, 2022 (under the supervision of Ms. Stevenson) did not meet certifications standards and could not count toward CF experience for ASHA certification", a complaint before the ASHA ethics board was initiated against Mr. Wright. *Id.* Wright was aware of this fact, and he withdrew his initial application only to file a second application that failed to disclose the full factual details and falsely implied that he started his Clinical Fellowship in October of 2022, under the supervision of Ms. Johannes. *Id.*

During the ethics complaint process, Plaintiff was represented by counsel, and he denied making misrepresentations in his application. On June 26, 2025, the Board of Ethics found that Wright violated ASHA's Code of Ethics and revoked his membership and certification for six months. Wright was notified that the "proposed sanction is a formal disciplinary action of public record." *Id.*, PageID.418. Through his attorney, Wright requested further consideration. On October 24, 2025, the Board of Ethics affirmed the Initial Determination. ECF No. 38-2.

Wright filed this lawsuit on November 5, 2025. ECF No. 1. Wright filed his first amended his complaint on March 11, 2026. ECF No. 58.

**III. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

**IV. Analysis**

The Sixth Circuit summarized the Counts in Wright's complaint and concluded that each Count was dependent on Wright's alleged claim that ASHA failed to accommodate him during the Board of Ethics proceedings. The Sixth Circuit stated:

> In his complaint, Wright alleges that ASHA failed to accommodate him as required by the ADA, that ASHA's failure to accommodate him was discrimination under the Rehabilitation Act, that ASHA's failure to accommodate him deprived him of fair procedure, and that ASHA's failure to accommodate him was retaliation for complaining about an ASHA staff member. In other words, all four counts in Wright's complaint depend on proving that he requested a reasonable accommodation during the ethics review process and that ASHA failed to provide it. *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 525 (6th Cir. 2021) (setting out the standard for a prima facie failure-to-accommodate claim). Even if Wright is attempting to argue that ASHA failed to engage in the informal interactive process required by the ADA, *see* 29 C.F.R. § 1630.2(o)(3), he still must start by showing that ASHA denied his request for accommodations, *see Thompson*, 985 F.3d at 525 (explaining that the "failure to engage in the interactive process does not give rise to an independent claim," and "[i]nstead, it is a violation of the ADA only if the plaintiff establishes a prima facie case of failure to accommodate").

ECF No. 83, PageID.927.

Wright alleges that Defendants violated his ADA and RA rights <u>during the ethics complaint process</u> by failing to fully address his requests and provide him with accommodations due to Post-Traumatic Stress Disorder. "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson County*, 219 F.3d 555, 557, n. 3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*,

62 F.3d 843, 846, n. 2 (6th Cir. 1995)). Wright claims that Defendant ASHA failed to engage in the interactive process and failed to accommodate his requests during the Board of Ethics proceedings.

In determining the appropriate reasonable accommodation, both parties must engage in an informal interactive process in good faith. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202-03 (6th Cir. 2010); *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018). As set forth above, the Sixth Circuit recognizes that the "failure to engage in the interactive process does not give rise to an independent claim." *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 525 (6th Cir. 2021). Instead, Wright must establish a prima facie case of failure to accommodate. *Id.* First, Wright must show that he requested accommodation and that ASHA failed to provide it. *Id.* The Sixth Circuit has already observed that this is a difficult hurdle for Wright to overcome based upon the facts of this case. ECF No. 83, PageID.927. The Sixth Circuit stated:

> The opposite is true. After receiving documentation supporting Wright's request, ASHA agreed to significantly modify its procedure, going so far as to eliminate all-in-person proceedings. Wright fails to show that those accommodations were insufficient or that other requested accommodations were denied.

*Id.*

During the ethics proceeding, in which Wright was represented by counsel, Wright requested what he describes as "accommodations" during the process to allow him to better understand the process and make it easier for him to proceed through the process. As explained, Wright made a request for accommodation during the

Board of Ethics proceedings. On June 30, 2025, Wright sent a letter to ASHA informing ASHA of his PTSD with requested accommodation. ECF No. 38-3. A portion of that letter, which is dated June 30, 2025, is shown below.

> **Subject:** Request for Reasonable Accommodations Under the Americans with Disabilities Act (ADA)
>
> **To Whom It May Concern,**
>
> I am writing to formally notify ASHA that I have a diagnosed disability— Post-Traumatic Stress Disorder (PTSD), chronic, with dissociative symptoms (ICD-10 code F43.12), commonly referred to as Complex PTSD—which significantly impairs my ability to fully engage in the current ethics complaint and appeal process against me.
>
> I hereby request reasonable accommodations under the Americans with Disabilities Act (ADA) in connection with this matter. These accommodations may include, but are not limited to:
>
> - Modifications to communication methods,
> - Extensions or modifications of deadlines,
> - Any additional assistance necessary to ensure a fair and accessible process.
>
> Additionally, I request detailed information and supporting documentation regarding the basis for ASHA's initial determination—specifically the allegations relating to the teletherapy hours percentage. The Initial Determination provides no evidence or explanation to support its claims, severely impacting my ability to prepare an adequate response.
>
> **As a reasonable accommodation, I request:**
>
> 1. A detailed explanation and all supporting documentation used to form the teletherapy hours allegation.
>
> 2. **An explanation and documentation addressing why ASHA records reflect a CF start date of 2023, when I have already submitted clear, verifiable evidence demonstrating my CF began in 2022.**

*Id.*, PageID.424-25.

ASHA notified Plaintiff that it would require additional information by July 31, 2025. ECF No. 38-4. That deadline was subsequently extended to Aug. 11, 2025. ECF No. 38-5. Wright responded with a letter from Dr. Stephen J. Hickner stating that Dr. Hickner recommended: (1) extended deadlines, (2) written only commendations, (3) clear, plain-language instructions, (4) recognition of disability-related challenges, (5) flexibility in submission formats, and (6) an interactive process acknowledging these needs. ECF No. 38-6, PageID.434-35.

ASHA notified Wright's attorney that the requested accommodations were approved. ECF No. 38-7. Relevant portions of ASHA's letter dated Aug. 18, 2025, are shown below.

> Ms. Kurzweil:
>
> We have reviewed Mr. Wright's accommodation request to conduct the upcoming Further Consideration Hearing (FCH) entirely through written communication, based on his qualifying disability under the Americans with Disabilities Act (ADA). Thank you for providing the ASHA Ethics Office with medical documentation supporting Mr. Wright's need for this accommodation.
>
> After careful consideration, ASHA has determined that granting Mr. Wright's request for written-only communication will not fundamentally alter the nature of the FCH process or create an undue burden on the organization.
>
> Accordingly, Mr. Wright's accommodation request is **approved**. This means that:
>
> - All FCH communications will be conducted in writing.
> - Mr. Wright is invited to provide a written FCH statement in place of an in-person presentation.
> - The BOE's questions for Mr. Wright are attached to this correspondence. He may submit his written responses to these questions with his written FCH statement.
> - Mr. Wright may include any supporting materials he wants the BOE to consider.
>
> As set forth above, to ensure a complete review, we request that Mr. Wright respond to the **seven (7) additional questions** in his written submission. His responses should be as detailed as possible and may include relevant documents, evidence, or statements.
>
> In addition, the BOE will grant Mr. Wright **60 days** to submit the written FCH statement and the responses. This will provide adequate time to prepare these materials. The new submission deadline is **Friday, October 17, 2025.**

Wright has failed to present evidence showing that a genuine issue of material fact remains with respect to the issue of whether ASHA denied his request for reasonable accommodation; the evidence shows that Wright's requested accommodations were granted. As the Sixth Circuit stated, each of Wright's four counts are dependent on a showing that ASHA denied a reasonable request by Wright

for accommodation. The record fails to indicate a genuine issue of material fact regarding whether ASHA denied any of Wright's requests for accommodation. For this reason, it is recommended that the Court grant Defendant's motion for summary judgment because no genuine issue of material fact exists, thus entitling ASHA to judgment.

In his 38-page response brief, Wright backs away from his ADA and RA claims. His introduction states: "[a]t its core, this case is not about disability accommodations. It is about Defendant's retroactive reclassification of a Clinical Fellowship that began in 2022." ECF No. 86, PageID.2345. Wright is essentially asking this Court to reverse the decision made by ASHA's Board of Ethics, determine that he qualified by completing an appropriate Clinical Fellowship, and order ASHA to grant him a CCC. ECF Nos. 91 and 92. However, judicial review of an accrediting agency or organization's decision is limited:

> [G]reat deference should be afforded the substantive rules of these bodies and courts should focus on whether an accrediting agency such as the [ASHA] followed a fair procedure in reaching its conclusions. We are not free to conduct a *de novo* review or substitute our judgment for that of the [ASHA] or its Council. Rather, in analyzing whether the [ASHA] abused its discretion or reached a decision that was arbitrary or unreasonable, we focus on whether the agency "conform[ed] its actions to fundamental principles of fairness."

*Thomas M. Cooley L. Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 713 (6th Cir. 2006).

Here, Wright merely disagrees with ASHA's conclusion that he did not meet the necessary Clinical Fellowship standards for certification. ASHA consistently informed Wright what he needed to do to qualify for a CCC. Wright's disagreement with ASHA staff as to what qualifies for a Clinical Fellowship does not make ASHA's

decision unreasonable. Nor does Wright's statement that he did not misrepresent his Clinical Fellowship start date in his second application establish that ASHA's Board of Ethic's decision was unreasonable or arbitrary and capricious. The record shows that ASHA was very fair in handling Wright's application for a CCC, and fair during the Board of Ethic's process. Wright's disagreement with the outcome is not a basis for this Court's interference with ASHA's decision.

Wright moves for Rule 11 sanctions against ASHA and counsel based upon representations made in Defendant's motion for summary judgment that Wright did not complete the necessary Clinical Fellowship to obtain a CCC. ECF No. 84. Wright continues to assert that this is false because he disagrees with ASHA's finding that his asserted 2022 Clinical Fellowship start date was a false statement. A Court may impose sanctions under Rule 11 against an attorney or party who make representations for an improper purpose, to harass, cause delay, or to increase the cost of litigation, or who asserts arguments that have no basis in law, or factual contentions that lack evidentiary support. Fed. R. Civ. P. 11(b). The problem with Wright's motion for sanctions is simply that neither ASHA nor defense counsel made any false statements or improper legal or factual arguments in the motion for summary judgment. In the opinion of the undersigned, Wright has presented no reason to justify the imposition of Rule 11 sanctions against ASHA or counsel.

Finally, Wright objects to the Declaration of Katherine Meyer and asks the Court to not consider parts of the declaration in ruling on these motions. ECF No. 99. First, Meyer's declaration, which is attached to Defendant's response to

Plaintiff's motion for summary judgment, has not been considered in this R. & R. ECF No. 94-1. For that reason, Plaintiff's objections to the declaration are moot and respectfully should be denied. Moreover, Plaintiff's objections are simply argumentative.

## V. Recommendation

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

It is further recommended that the Court deny Plaintiff's motion for summary judgment, Plaintiff's motion for sanctions, and Plaintiff's objection to the Meyer declaration.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: October 19, 2026

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE

No. 26-2014

# EXHIBIT B-3

Judgment
filed November 6, 2026
(RE 105, Page ID # 2885)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RODERICK WRIGHT,<br>Plaintiff,<br><br>-v-<br><br>AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION,<br>Defendant. | No. 1:25-cv-1367<br><br>Honorable Paul L. Maloney |

## JUDGMENT

The court has resolved all claims and, therefore, **JUDGMENT ENTERS.**

**THIS ACTION IS TERMINATED.**

**IT IS SO ORDERED.**

Date: November 6, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge